UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MICHELLE D. MOBLEY  (Social Security No. XXX-XX-9133), | ) ) ) | |
| Plaintiff, | ) ) ) | 4:12-cv-105-SEB-WGH |
| vs. | ) ) | |
| CAROLYN W. COLVIN,  Acting Commissioner of the Social  Security Administration | ) ) ) ) | |
| Defendant. | | |

**REPORT AND RECOMMENDATION ON
JUDICIAL REVIEW OF DENIAL OF BENEFITS**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to an order to deliver a Report and Recommendation. (Docket No. 17). Plaintiff, Michelle D. Mobley ("Ms. Mobley"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner", "SSA") denying her Disability Insurance Benefits or Supplemental Security Income (collectively, "benefits") under the Social Security Act prior to March 13, 2012. 42 U.S.C. § 301 *et seq.* The issues have been fully briefed and the Magistrate Judge, being duly advised, recommends **AFFIRMING** the Commissioner's decision.

**Procedural History**

Ms. Mobley, a claimant with a high school education, applied for benefits on July 17, 2009. (R. 17, 86, 93). Ms. Mobley alleged a disability onset date of

November 15, 2008; she was 35 years old on that date. (R. 86). Her applications were denied initially and upon reconsideration. (R. 46, 53, 63, 70). On May 25, 2011, an Administrative Law Judge ("ALJ"), Jim Fraiser, held a hearing at which Ms. Mobley and vocational expert ("VE") Sharon Lane testified. (R. 10). On June 17, 2011, the ALJ issued his decision finding Ms. Mobley not disabled. (R. 18-19). The Appeals Council denied her request for review on August 1, 2012 (R. 1), leaving the ALJ's decision as the Commissioner's final decision. 20 C.F.R. §§ 404.955(a), 404.981. As a final decision, jurisdiction is proper in this court. 42 U.S.C. § 405(g).

## ALJ Findings

At step one, the ALJ found that Ms. Mobley had "not engaged in substantial gainful activity since November 15, 2008, the alleged onset date." (R. 12). At step two, the ALJ found that the Plaintiff suffered from degenerative disease and adjustment disorder as severe impairments. (R. 12). At step three, the ALJ determined that none of Ms. Mobley's impairments, alone or in combination, met or equaled any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 13-14).

The ALJ then determined Ms. Mobley had the residual functional capacity ("RFC") to perform sedentary work, as defined by 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following limitations: Mobley could walk or stand for 20 minutes at a time for no more than two hours in an eight-hour workday; she could sit for one hour at a time for no more than six hours in an eight-hour workday; Mobley could never crouch, crawl, kneel, or climb; she

could occasionally stoop halfway and push or pull less than ten pounds with her lower left extremity; she could not work in high stress or conflict oriented jobs; she could not feel texture; and Ms. Mobley would miss one month [sic] due to pain.  (R. 14-17).  In evaluating Ms. Mobley's credibility, the ALJ concluded that "[i]n terms of the claimant's alleged debilitating physical and mental conditions, the evidence does not support that these conditions are as limiting as alleged."  (R. 16).

At step four, the ALJ found that Ms. Mobley could not perform her past relevant work.  (R. 17).  At step five, the ALJ considered Ms. Mobley's age, education, work experience, RFC, and the VE's testimony, and concluded that there were jobs existing in significant numbers in the national economy she could perform.  (R. 17-18).  Based on these findings, the ALJ concluded Ms. Mobley was not disabled at any time between her alleged onset date and her date last insured.

## Legal Standards

In order to qualify for benefits, Ms. Mobley must establish that she suffered from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To establish disability, the claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological

3

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4).  The burden of proof is on Ms. Mobley for steps one through four; only after Ms. Mobley has met her evidentiary burden does the burden shift to the Commissioner at step five.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make

4

independent findings of fact, and decide questions of credibility. *Perales*, 402 U.S. at 399-400. The court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

## Medical Evidence

Ms. Mobley's appeal largely concerns whether the ALJ failed to fully consider how her back pain may limit her ability to perform full-time work, so the court limits its discussion to evidence about her back pain and failed back surgery. In December 2008, Ms. Mobley underwent a magnetic resonance imaging ("MRI") of her lumbar spine, which revealed hypertrophic changes at the L5-S1 lumbosacral joint ("L5-S1"). (R. 284). A myelogram in January 2009 showed a cyst and conjoined nerve root at L5-S1. (R. 154). Ms. Mobley was prescribed physical therapy and given epidural steroid injections, but the injections failed to provide relief, and she appears to have engaged in only one therapy session. (R. 163, 169, 171, 300, 361). In September 2009, Ms. Mobley underwent a consultative examination by Disability Determination Bureau ("DDB") examining physician Dr. Richard Gardner. Dr. Gardner noted that Ms. Mobley was unable to lie flat and walked "in an antalgic manner" due to lumbar spine and L5-S1 pain, but did not require an assistive device to walk and had full range of motion in her cervical spine, shoulders, and knees. (R.

174).  On October 7, 2009, DDB consulting physician Dr. J. Sands reviewed Dr. Gardner's findings and concluded her back pain was not severe.  (R. 177).

Ms. Mobley was subsequently referred to a neurosurgeon, Dr. John Harpring, who performed "[b]ilateral L4, L5, and S1 lumbar laminotomies, foraminotomies, and medial facetectomies" on April 2, 2010.  (R. 371).  Dr. John Johnson also performed "a posterior lumbar fusion from L4 to S1" on the same date.  (R. 371).  In April and July 2010, Ms. Mobley complained of pain in her lower extremities, and was proscribed Topomax.  (R. 314, 329, 337).  In February 2011, however, Ms. Mobley had a computed tomography ("CT") scan of her lumbar spine.  The CT scan showed stable degenerative spondylosis and no complications from the April 2010 surgery.  (R. 354).  In March 2011, Ms. Mobley expressed her desire to have the rods from the April 2010 surgery removed, despite the normal CT findings and her understanding that the rod removal was unlikely to relieve her leg pain.  (R. 356).  The rods were removed on April 11, 2011.  (R. 364-65).

## Discussion

Ms. Mobley raises two issues on appeal.  First, Ms. Mobley directs the court to the RFC assessment, in which the ALJ concludes Ms. Mobley "would miss one month [sic] due to pain."  (R. 14, 17).  What this phrase means is not readily apparent, and the ALJ never clarifies its meaning.  The ALJ asked the VE, in separate hypotheticals, if there would be any jobs available if Ms. Mobley had to "miss one day a month" or "miss two to three days a month because of pain."  (R. 39, 40).  Therefore, "[t]he argument could be made that

6

the ALJ intended to put down that the claimant would miss only one day" of work *each month*. (Plaintiff's Brief 9 (emphasis added)). Missing one month due to pain is a restriction rarely, if ever, included in an RFC. The Magistrate Judge therefore finds Ms. Mobley's reading reasonable and considers her RFC to have a restriction of missing one day of work per month due to pain.

The court now addresses the main issue Ms. Mobley raises: that the ALJ mischaracterized the record evidence and failed to discuss other significant evidence in his RFC determination. Specifically, she alleges that the ALJ improperly assessed Ms. Mobley's credibility as it pertained to her statements about back pain and its limiting effects.

Assessing a claimant's credibility for determining the weight of a claimant's testimony in the ALJ's RFC assessment is a two-step process. First, the ALJ must determine whether the impairments found at step two could reasonably be expected to cause claimant's symptoms. The ALJ found that Mobley's impairments could be expected to cause these symptoms. (R. 15). Second, the ALJ must determine whether the claimant's statements about the intensity and persistence of symptoms are consistent with other evidence. 20 C.F.R. § 404.1529(a-c). The ALJ found that Ms. Mobley's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."[1] (R. 15). Credibility determinations are entitled to special

---

[1] While Ms. Mobley does not challenge the ALJ's decision on this ground, the court notes that this language has been sharply criticized as "meaningless boilerplate" that
(continued)

7

deference, since the ALJ is in a unique position to assess a claimant's veracity and forthrightness. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). When there is evidence supporting and detracting from allegations, it is the ALJ's role to resolve the conflicting evidence and arguments, not the court. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). As long as the ALJ builds a logical bridge between the evidence and his conclusion, *id.* at 1237-38, and the finding is not "patently wrong," *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994), a reviewing court should not disturb this finding.

In evaluating the limiting effects of a claimant's pain symptoms, the ALJ must evaluate both objective medical evidence and any other evidence brought before the court, including a claimant's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(2-3). The non-medical factors relevant to a claimant's allegation of pain are:

(i) Daily activities;
(ii) Location, duration, frequency, and intensity of pain;
(iii) Precipitating and aggravating factors;
(iv) Type, dosage, effectiveness, and side effects of medication taken to alleviate symptoms;
(v) Non-medication treatment received;
(vi) Non-medical remedial measures taken by the claimant to relieve pain; and
(vii) Other factors.

20 C.F.R. § 404.1529(c)(3).

---

"gets things backwards" by predetermining a claimant's RFC and judging the claimant's credibility against that RFC. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, such boilerplate language does not by itself necessitate remand, so long as the court can fairly trace the ALJ's path of reasoning. *Richison v. Astrue*, 462 Fed. App. 622, 625-26 (7th Cir. 2012). The ALJ, as discussed *infra*, engaged in a thorough and well-supported credibility analysis, and the Magistrate Judge finds that the use of boilerplate language is harmless.

Ms. Mobley argues that the ALJ's analysis was misleading and omitted many of her statements. While the ALJ discussed Ms. Mobley's daily activities, he failed to discuss her hearing testimony, in which she stated she had been unable to perform household chores since March 2009. (R. 16, 32-33). Ms. Mobley also testified that while she can sit for an hour and stand for 15-20 minutes at a time, she must also lay down during the day to get relief from her pain, which was only slightly lessened through medication. (R. 32-36). The ALJ failed to address her need to lie down as a remedial step, which Ms. Mobley claims was required by Agency rules. According to Ms. Mobley, this failure to consider her limitations was an error of law, *see Nelson*, 131 F.3d at 1234, and a failure of the ALJ's duty to articulate reasons for accepting and rejecting evidence and discuss significant evidence contrary to the ALJ's finding. *Lauer v. Apfel*, 169 F.3d 489, 494 (7th Cir. 1999); *Herron*, 19 F.3d at 333. Remand, she argues, is therefore appropriate. *Caviness v. Apfel*, 4 F. Supp. 2d 813, 822-23 (S.D. Ind. 1998) (citations and quotations omitted).

Ms. Mobley's argument is unfounded. The ALJ discussed substantial medical evidence that showed her back pain was not as limiting as she claimed. (R. 15). The ALJ noted that while imaging tests ordered by her treating physician, Dr. Joselito Millian, in January 2009 showed a conjoined nerve and Tarlov cyst, they also showed no significant narrowing of her neuroforamen or spinal canal. (R. 154). Significantly, Dr. Millian concluded that the cyst could not cause as much pain as Ms. Mobley was alleging, and he could not identify a medically observable impairment that would cause her

9

such pain. (R. 163). While Ms. Mobley did have an impinged nerve that required surgery on April 2, 2010, the surgery was successful, and she and Dr. Harpring agreed that her condition had improved at an appointment six weeks later. (R. 323, 369-70). Despite her ongoing complaints of pain, an MRI in February 2011 showed "stable degenerative spondylosis status" with no complications from the April 2010 surgery. (R. 354). The ALJ also noted that Ms. Mobley had continued to work after the alleged disability onset date. (R. 146). While the ALJ found she could not return to that work, her work was evidence that she was not so limited in her activities as she claimed, and the ALJ reasonably concluded that Ms. Mobley exaggerated her symptoms. 20 C.F.R. § 404.1529(c)(4). The ALJ's decision to discount her credibility was reasonable and well-supported. *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008); *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000).

    The ALJ's discussion of Ms. Mobley's daily activities was also not improper. Based on the activities of daily living report completed by Brenda Jackson, Ms. Mobley's mother, in October 2009, and Ms. Mobley's November 2009 examination by DDB psychologist Dr. Larry Freudenberger, the ALJ noted that Ms. Mobley could dress, groom, and bathe herself, cook, clean, and do her laundry. (R. 16, 124, 192). While the ALJ failed to discuss Ms. Mobley's testimony that she no longer did laundry or performed household chores, the ALJ need not discuss every statement made by a claimant in evaluating a claimant's credibility. *See Dixon v. Massanari*, 270 F.3d 1171,

1176 (7th Cir. 2001). Moreover, the ALJ did not use her activities of daily living to show she was capable of full-time work. Rather, he only used it as a component of the credibility determination, concluding that Ms. Mobley's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 16). This is not patently wrong, and the court should not disturb the finding.

Finally, Ms. Mobley's testimony that she needed to lie down during the day to relieve her back pain was inconsistent with her previous statement to Dr. Millian, in which she indicated that lying down was helpful, but never said it was necessary. (R. 32, 164). There is no record evidence of medical sources opining that lying down was necessary, so the court is left only with Ms. Mobley's subjective complaints, which the ALJ reasonably discounted. The ALJ's failure to discuss her need to lie down as a remedial measure does not itself necessitate remand. Remedial measures taken by a claimant is one of the seven factors SSA uses to evaluate a claimant's pain symptoms. 20 C.F.R. § 404.1529(c)(3)(vi). However, the ALJ need not explicitly discuss all seven factors, so long as his evaluation of non-medical evidence is adequate and the court can fairly trace the path of the ALJ's reasoning. *See, e.g., Schmidt v. Barnhart* 395 F.3d 737, 747 (7th Cir. 2005); *Hybarger v. Astrue*, 2011 WL 744893, at *9 (S.D. Ind. Feb. 23, 2011). The ALJ's opinion does so, and the court declines to find that he erred by failing to discuss Ms. Mobley's purported need to lie down to relieve pain.

11

## Conclusion

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the Commissioner's decision finding Ms. Mobley not disabled and not entitled to benefits be **AFFIRMED**.

You are hereby notified that the District Judge may reconsider any pretrial matter assigned to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Any party shall have fourteen (14) days from the date of service to file written objections to such Report and Recommendation.

**SO RECOMMENDED** the 19th day of July, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**